## DISTRICT OF COLUMBIA v. SAFE DE-POSIT & TRUST CO. OF BALTIMORE.

### No. 7450.

United States Court of Appeals for the District of Columbia.

Decided May 13, 1940.

Elwood H. Seal, Corp. Counsel, and Vernon E. West and Glenn Simmon, both Asst. Corp. Counsel, all of Washington, D. C., for petitioner.

David R. Shelton, of Washington, D. C., for respondent.

Before STEPHENS, EDGERTON, and RUTLEDGE, Associate Justices.

RUTLEDGE, Associate Justice.

The only question presented is whether, in the circumstances of this case, the amount payable to the District of Columbia under its estate tax law is 80% of the federal estate tax or merely the difference between that amount and the inheritance tax which has been paid to the District on account of the same estate. The question is solely one of statutory construction, involving three interrelated statutes, but more especially the meaning of the District's estate taxing act in that setting.

The federal estate tax law [Title III, § 301(a), (b) of the Revenue Act of 1926] allows the taxpayer to deduct up to 80% of the tax imposed by that act for payments made under estate, inheritance, legacy or succession tax laws of states, territories or the District of Columbia.[1] Title V of the District of Columbia Revenue Act of 1937 [50 Stat. 683, D.C.Code 1929 (Supp.V) tit. 20, §§ 969–969aa] enacted both an inheritance tax (under Article I) and an estate tax (under Article II) for the District. The former is levied according to rates specified in the statute. The latter is imposed in the following language:

"Sec. 18. In addition to the taxes imposed by article I, there is hereby imposed upon the transfer of the estate of every decedent who, after this title becomes effective, shall die a resident of the District of Columbia, a tax equal to 80 per centum of the Federal estate tax imposed by subdivision (a) of section 301, title III, of the Revenue Act of 1926, as amended, or as hereafter amended or reenacted.

"Sec. 19. There shall be credited against and applied in reduction of the tax imposed by section 18 of this title the amount of any estate, inheritance, legacy, or succession tax lawfully imposed by any State or Territory of the United States, in respect of any property included in the gross estate for Federal estate-tax purposes as prescribed in title III of the Revenue Act

---

[1] "The tax imposed by section 410 shall be credited with the amount of any estate, inheritance, legacy, or succession taxes actually paid to any State or Territory or the District of Columbia, in respect of any property included in the gross estate. The credit allowed by this subsection shall not exceed 80 per centum of the tax imposed by section 410 * * *." 26 U.S.C. § 413(b). The provision appears in substantially the same form in the new Internal Revenue Code, Act of Feb. 10, 1939, 53 Stat. 1, 883, 26 U.S.C. (Supp. V) § 813(b), 26 U.S.C.A. Int.Rev.Code §§ 810, 813(b).

of 1926, as amended, or as hereafter amended or reenacted: *Provided, however,* That only such taxes as are actually paid and credit therefor claimed and allowed against the Federal estate tax may be applied as a credit against and in reduction of the tax imposed by section 18.

"Sec. 20. In no event shall the tax imposed by section 18 of this title exceed the difference between the maximum credit which might be allowed against the Federal estate tax imposed by title III of the Revenue Act of 1926, as amended, or as hereafter amended or reenacted, and the aggregate amount of the taxes described in section 19 of this title (but not including the tax imposed by section 18) allowable as a credit against the Federal estate tax.

"Sec. 21. The purpose of section 18 of this title is to secure for the District of Columbia the benefit of the credit allowed under the provisions of section 301(c) [b?] of title III of the Revenue Act of 1926, as amended, or as hereafter amended or reenacted, to the extent that the District of Columbia may be entitled by the provisions of said Revenue Act, by imposing additional taxes, and the same shall be liberally construed to effect such purpose: *Provided,* That the amount of the tax imposed by section 18 of this title shall not be decreased by any failure to secure the allowance of credit against the Federal estate tax." [2]

Pursuant to Article I, respondent paid $2,211.22 inheritance taxes to the District on account of its decedent's estate. Thereafter the District assessed against it an estate tax of $2,625.23 (a sum equal to 80% of the federal estate tax imposed upon the same estate), together with interest thereon of $52.50, which respondent paid under protest February 17, 1939. This assessment was made on the theory that Article II imposes a tax of 80% of the federal estate tax without reference to or credit for any amount paid to the District as inheritance tax under Article I. Respondent, however, says that Article II requires payment of only the difference between these two amounts, namely, in this case $414.01. The Board of Tax Appeals for the District sustained respondent's contention and ordered a refund of estate taxes in the sum of $2,211.22 with interest thereon of $44.22. The appeal

is from this decision. We think the Board was right.

Petitioner says that the statute (Article II) is clear and unambiguous, and therefore interpretation is neither necessary nor in order. Supporting this argument, it claims that the only ambiguity arises from Section 21, which it regards as "a merely purposive declaration in general terms, like a preamble" and therefore no part of the legislation proper. Without that section, it is said, the statute involves no conflict in terms; and such a provision can be employed only to resolve an ambiguity otherwise existing, not to create one. Petitioner further contends that if construction is required, its interpretation is sustained both by the language of the act considered as a whole and its legislative history.

■ Even if Section 18, standing entirely alone or only in conjunction with Section 19, could be construed according to petitioner's view, we cannot disregard Section 21 or the other statutes with which Article II is dovetailed. Article I and Article II together with Title III (by which we designate the federal estate tax law) form a consistent and unified system of death taxes, each part of which is related specifically by its terms or by clear inference to the others. Articles J and II were adopted contemporaneously and as complementary parts of a District death tax plan. Section 18 specifically states that the tax imposed by it shall be "in addition to the taxes imposed by article I," and measures the tax, not by definite rates such as are employed in Article I, but by a fixed percentage of the federal estate tax.

■ This method of measurement is highly significant, especially in the fact that the stated percentage is exactly the amount allowed by the federal statute as a credit to the taxpayer on account of death taxes paid to a state, territory or the District. Considered in conjunction with the provisions of Title III, the method of measurement may indicate that Congress, by enacting Section 18, intended not to fix the amount of the tax entirely independently of the taxes imposed by Article I, but rather merely to give to the District the full benefit of the federal

---

[2] The section numbers quoted are those of the Act as originally enacted. In substance, they appear in D.C.Code (Supp. V) as Sections 969g to 969j, corresponding to Sections 18–21 in the quotation here.

credit, which it might not receive if the only tax were that levied by Article I. Had Congress intended to create an estate tax invariably producing a specified amount without reference to Article I, it would have been simple, clear and certain for it to define the tax in Section 18, not as it did, in effect, by reference to the federal credit, but by specific rates as was done in Article I and Title III. Even if any other percentage of the federal estate tax than 80 had been prescribed, the inference might be reasonable that the tax was to be independent in its amount of any limitation implicit in reference to the federal credit and Article I. But reference to the federal tax *in the exact amount* of the federal credit suggests that Congress had in mind that credit as well as the federal tax and intended merely to give the District the full benefit of that credit. And it cannot be assumed that in doing so Congress ignored Article I which it enacted simultaneously with Section 18 and as an integral part of a comprehensive death-tax system which included both of them. We think therefore that Congress did not intend to give the District an estate tax entirely independent of the combined effects of Article I and the federal credit.

But it is said, in opposition to this, that Section 18 imposes the tax of 80% of the federal tax *"in addition to the taxes imposed by article I,"* and that this means that the whole amount of that percentage must be in addition to those taxes. The quoted phrase is not inconsistent with meaning that the estate tax, whatever its amount, shall be "in addition to" the inheritance taxes. So construed it would rebut any inference that the two taxes are alternative or mutually exclusive. The question is whether the phrase is intended merely to disclose beyond cavil the intention of Congress to levy both inheritance and estate taxes to the extent that doing so is necessary to give the District the full benefit of the federal credit or, on the other hand, to give the District, in some situations at least, twice the benefit of that credit. The latter construction would require an assumption of solicitude by Congress for the death taxing power of the District evidenced in relation to no other local taxing jurisdiction, whether state or territorial,[3] and therefore one difficult to attribute to Congress in view of its general policy as to death tax credits. Furthermore, as we

shall show, it would operate upon different estates to some extent with great inequality and highly discriminatory effect. No reason is assigned to support the view that Congress, familiar with its own universal policy of favoring the local jurisdiction as to death taxes, desired or had reason to desire that the District should be given a specially favored position in this respect. Yet that is the conclusion which must be reached if petitioner's view is accepted.

Furthermore, we think Section 21 unequivocally supports the opposite construction of Section 18 and that this is its only apparent purpose. It ties the tax rate not only to the federal tax, but also specifically to the federal credit, thereby supporting the implicit reference of Section 18 to that credit. That can be purposeful only if the object was to make the credit a limitation upon the amount of the tax. Otherwise reference to it would be mere redundancy. Reference to the federal tax was sufficient to fix a tax rate for the District, if the amount of the tax was not to vary as the federal credit might cause it to vary in conjunction with the invariable inheritance taxes imposed by Article I. Reference to the credit therefore must be regarded, if it is not to be mere repetition of the provision fixing the rate initially in Section 18, as intended in some circumstances to reduce the amount which might be thought collectible under Section 18 if it were considered entirely independently of Article I and Title III.

This view is confirmed by other explicit language of Section 21. Without equivocation or ambiguity it states the purpose of Section 18 as being to secure for the District the benefit of the federal credit *"to the extent* that the District of Columbia may be entitled *by the provisions of said Revenue Act* [Title III], by imposing *additional* taxes." (Italics supplied) The "additional taxes," of course, are those imposed by Section 18. Additional to what? Clearly, as stated also in Section 18, additional to those imposed by Article I, the District inheritance tax. The occasion for empowering the District to levy the additional (estate) tax is explicitly stated to be in order to give it the benefit of the federal credit, and *to that extent.* This implies that, without such additional taxes, the District would not have that benefit, at any rate to the full extent, and that it

---

3 Cf. note 6 infra.

should have it, as other local taxing jurisdictions do. But the provision, is limitative as well as enabling in effect. "To the extent" specified means to the extent of the federal credit *and no more*. It was intended to put beyond question the amount of the additional taxes as well as the District's power to levy them. The phrase, as well as the entire section, was drawn in the understanding that Article I, generally speaking, would not give the District the full benefit of the federal credit. Its rates were too low to produce that result. Congress desired to make up the deficiency. For whatever reasons, it preferred to do so by prescribing additional estate taxes rather than by raising the inheritance tax rates. But, regardless of the method, the purpose was to give the District the benefit of the federal credit and no more than that. The very language, "to the extent that the District of Columbia may be entitled *by the provisions of said Revenue Act*" (italics supplied), shows this conclusively. The federal act permits the states and the District to capture 80% of the federal tax. That is true regardless of the number and amount of death taxes imposed by the local taxing jurisdiction. The federal act does not permit local capture of 80% of the federal tax for *each* death tax locally levied. Congress did not undertake to discriminate as among local inheritance, estate, succession and legacy taxes in allowance of the credit. The states were left free, as far as having the benefit of the federal credit is concerned, to adopt one or another, any or all, of these forms of death taxation. Whether the state selects one, some or all of them, the amount of the federal credit remains constant. It does not vary with the number of taxes imposed by the state; that is, the state cannot multiply the credit two or more times by adopting two or more different types of death tax. If it could do that, the federal tax would soon disappear entirely as a producer of federal revenue. Hence, in this case, there cannot be two credits of 80% of the federal tax because there are two forms of District death tax, and no one contends so. But the federal credit, by specific terms of the

federal act, is applicable to each of the District's taxes. Where only one of the taxes is leviable the credit admittedly applies. Where both are leviable, as here, acceptance of petitioner's theory would seem to require either that the taxpayer be, given two federal credits of 80%—one for each tax—or that the credit become at least partially inapplicable to one of the taxes. Neither alternative is acceptable.

The sounder view, in fact the only tenable view, is that Congress intended to give to the District (and the taxpayer) the full benefit of the federal credit *once,* but not twice and thereby to make the credit fully applicable to both, not merely to one, of the taxes. "By the provisions of" Title III, the District was "entitled" to "the benefit of the credit" of 80% once and under Article II was empowered to impose "additional" taxes "to that extent." It was not entitled to do more. The tax rate prescribed by Section 18, therefore, was not a flat and invariable 80% of the federal estate tax. It was a variable rate limited by that amount as a maximum, but varying beneath it in accordance with the amount paid to the District on account of the same estate for inheritance taxes under Article I.

Section 19 and Section 20 of Article II are entirely consistent with the remainder of the statute so construed. Since the tax rate prescribed by Section 18 takes account of inheritance taxes imposed on the same estate by Article I and reduces the estate tax by their amount, there was no need—in fact it would have been inappropriate—to provide in Sections 19 and 20 for a credit on account of the inheritance taxes payable to the District, although there was need to provide for credit for death taxes paid to other states and territories. District inheritance taxes were already allowed for in the tax rate itself and including them among credits allowed against the tax would have authorized the taxpayer, in effect, to deduct them twice, a result clearly in contradiction of the Congressional purpose to give the District the full benefit of the federal credit.[4]

---

[4] This construction also accounts for the parenthetical statement of Section 20 "(but not including the tax imposed by section 18)."

The proviso of Section 21, "that the amount of the tax imposed by section 18 of the title shall not be decreased by

any failure to secure the allowance of credit against the Federal estate tax," means, of course, that the taxpayer cannot avoid or reduce the payment due to the District by failing to claim the allowance to which he is entitled under the federal estate tax law.

The construction we have adopted makes a consistent whole of Article II and gives meaning to each of its provisions, while the opposite one would render Section 21 meaningless, redundant or contradictory to the remainder of the Act. It also dovetails Article II with Article I and Title III in accordance with the obvious intention of the Congress that they should be complementary and mutually co-operative in effect, not entirely and mutually independent and consequently, to a considerable extent, in conflict.

It goes far also to support this view that it avoids harsh and inequitable discriminations in application to estates of the same size which would follow inevitably from application of petitioner's construction. Application of its view would discriminate strongly, and we think unjustly, if not unconstitutionally (though we express no opinion as to this), against the estate of a resident decedent having all or much of its property so situated that its taxable situs is in the District and in favor of one of equal value as to which the taxable situs of some of the property would be elsewhere. We cannot think that Congress intended such a discrimination.[5] We believe that the clear purpose of the statute was to place the District upon a plane of equality with the states and territories in capturing for local purposes the 80% federal credit, not, as petitioner's interpretation would do, to give to the District an advantage not given to any other local taxing jurisdiction.

We are unable to find anything in the legislative history of the Act which contradicts respondent's view. Much is made, or attempted, of the fact that in the legislative hearings witnesses for the District, including the Corporation Counsel, pointed out that the Commissioners of the District "recommended a very low inheritance tax," and stated that "the inheritance tax is in addition to the estates tax." These statements are entirely consistent with and in no way contradict the view that the amount of the estate tax was to be no more than the difference between the inheritance tax and the federal credit. The fact that inheritance tax rates were low is the very reason for enacting the estate tax law and for making it "in addition to" the inheritance tax. It is not a reason for making the amount of the estate tax and the inheritance tax combined more than the federal credit, and we do not believe that Congress at any time understood or intended that this would be the effect of the legislation. On the contrary it had before it the death tax legislation of many, if not all, of the states, including particularly that of Maryland and of Virginia, as well as the provisions and the general policy of the federal estate tax law in reference to credits allowed for death taxes paid to the states. None of the state acts attempted to secure such an advantage for the state as is sought here for the District.[6] It is reasonable to assume therefore that Congress intended to give to the District the same advantage (and no more)

---

[5] As stated above, we express no opinion concerning whether such a discrimination, if it had been enacted, intentionally or inadvertently, would be constitutional. We think the character of the discrimination, even if valid, is such that, in the absence of expression of intention to adopt it so clear that there could be no doubt concerning it, it militates against any implication that Congress intended to adopt it or make it possible for the District to do so.

The discrimination becomes transparent when account is taken of the provision in Section 19 for credit for payment of death taxes to "any State or Territory."

[6] The Maryland and Virginia statutes will be found in Md.Ann.Code (Supp. 1935), Art. 62A; Va.Ann.Code (Michie 1936) Appx. p. 2427, Tax Code, § 115, respectively. It is stated, and not denied, that the model employed by Congress for framing Article II was the Maryland

law. In both Maryland and Virginia the amount of the estate tax is limited to the difference between the federal credit and the state inheritance taxes payable on account of the same estate. This is true also of California, Delaware, Hawaii, Indiana, Kansas, Kentucky, Maine, Minnesota, Montana, Nebraska, New Hampshire, New Jersey, Oklahoma, South Carolina, Tennessee, Texas, Vermont and Wisconsin. In some other states the full amount of the 80% federal credit is imposed as an estate tax and the inheritance tax is allowed as a credit. Many of the state estate tax statutes contain a statement of purpose—and of limitation—substantially identical with Section 21.

The differently worded statute of West Virginia, where the taxing authorities attempted to secure a construction like that sought here by the District, was held inoperative in Charleston National Bank v. Fox, 1935, 116 W.Va. 487, 182 S.E. 91.

as was enjoyed by the states. It modified the language of the taxing statute to the extent necessary to adapt it to the peculiar situation of the District, but in doing so it did not, either intentionally or inadvertently, impose the extraordinary, unprecedented and highly discriminatory tax for which the District contends. The language and the purpose of the statute are clearly to the contrary.

The decision of the Board of Tax Appeals of the District of Columbia is affirmed.